IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| STANLEY GERHART, et al. | : | |
| | : | |
| Plaintiffs | : | CIVIL ACTION |
| | : | |
| vs. | : | |
| | : | NO.  09-cv-1145 |
| COMMONWEALTH OF PENNSYLVANIA, et al. | : | |
| | : | |
| | : | |
| Defendants | : | |

**MEMORANDUM OPINION**

GOLDEN, J.                                                                                                                    AUGUST 13, 2009

Plaintiffs Stanley Gerhart and Judith Gerhart have filed a Complaint alleging, among other things, that their constitutional rights were violated when two Pennsylvania State Police troopers evicted them from their mobile home without a lawful court order. Defendants Commonwealth of Pennsylvania, Pennsylvania State Police, and State Trooper Maurice Minnifield ("Defendants") have filed the instant Motion to Dismiss. (Doc. No. 2). For the following reasons, the Motion is granted in part and denied in part.[1]

---

[1] The pending Motion to Dismiss was filed on March 23, 2009, (Doc. No. 2), and Plaintiffs' response was due on April 6, 2009. See Loc. R. Civ. P. 7.1(c) (stating that opposition briefs are due "within fourteen (14) days after service of the motion and supporting brief"). Plaintiffs did not file a timely response. On June 4, 2009, this Court filed a Rule to Show Cause ordering Plaintiffs to respond "no later than five (5) days from the date of this Rule." (Doc. No. 3). On June 10, 2009, Plaintiffs filed their Response to the Court's Rule to Show Cause. (Doc. No. 5). On June 11, 2009, Plaintiffs filed their Brief in Opposition to Defendants' Motion to Dismiss. (Doc. No. 4).

First, Defendants claim that Plaintiffs' response to the Court's Rule to Show Cause is untimely, as it was filed six days after the date of the Court's Rule to Show Cause, which required a response within five days. (Doc. No. 6). However, under Fed. R. Civ. P. 6(a)(2), when the time period to respond is less than eleven days (as is the case here), Saturdays and Sundays are excluded in computing any deadline from a court order. Accordingly, the deadline for Plaintiffs to respond to the Court's June 4, 2009 Rule to Show Cause was June 11, 2009. Thus, Plaintiffs' Response to the Court's Rule to Show Cause, dated June 10, 2009, was timely.

Second, the Court must briefly address the untimeliness of Plaintiffs' response to Defendants' Motion to Dismiss. Plaintiffs claim that they "did not receive *formal* notice of the filing of the aforementioned Motion to Dismiss and did not otherwise have actual or constructive notice of the filing" until the Court issued its Rule to Show Cause on June 4, 2009. (Pls.' Resp. to Rule to Show Cause ¶ 2) (emphasis added). Section 8(a) of Local Rule of Civil Procedure 5.1.2's accompanying ECF Procedures states that "[e]lectronic service of the Notice of Electronic

## FACTUAL BACKGROUND[2]

Plaintiffs, along with their minor child, resided in a mobile home located on real property in Northampton, Pennsylvania. (Compl. ¶ 7). While Plaintiffs resided at this mobile home, the real property affixed to the home was sold at a sheriff's sale to Inez Rogers ("Rogers"). (Id.). On December 30, 2006, two uniformed troopers from the Pennsylvania State Police, Defendants Maurice Minnifield and John Doe ("State Troopers"), arrived at the location of Plaintiffs' mobile home in a marked Pennsylvania State Police vehicle. (Id. ¶ 8). Defendants Minnifield and Doe then demanded that Plaintiffs immediately and permanently vacate their mobile home. (Id.). The State Troopers also notified Plaintiffs that the mobile home would be padlocked to prevent reentry. (Id.). Though Plaintiffs questioned the authority of the State Troopers, Plaintiffs complied with their demands. (Id. ¶ 9). With the help of various neighbors, Plaintiffs then collected their belongings and left the premises. (Id.). As a result of the eviction, Plaintiffs "were rendered homeless." (Id.). Plaintiffs believe that their mobile home was subsequently destroyed. (Id. ¶ 10). Plaintiffs allege that Defendants Minnifield and Doe "evicted the Plaintiffs from their home without any lawful Court Order or other proper authority" and "provided no opportunity to the Plaintiffs to have the matter addressed in a court of proper jurisdiction before their eviction." (Id. ¶¶ 11-12). Plaintiffs further claim that Defendants Minnifield and Doe acted "at the behest and solicitation of . . . Inez Rogers, who requested that Minnifield and Doe remove the Plaintiffs from their home in order to avoid the necessity of securing a

---

Case Filing constitutes service of the filed document to all such parties and shall be deemed to satisfy the requirements of Rule 5(b)(2)(D) of the Federal Rules of Civil Procedure." Moreover, Plaintiffs should have been monitoring the docket of this action on a regular basis. See Kuhn v. Sulzer Orthopedics, Inc., 498 F.3d 365, 371-72 (6th Cir. 2007), cert. denied, 128 S. Ct. 655 (2007). While the Court will allow Plaintiffs' case to proceed, further failure to follow the Court's rules by Plaintiffs will not be tolerated and may be a ground for sanctions and outright dismissal of their claims.

[2] Unless stated otherwise, all facts in this section are adopted from Plaintiffs' Complaint and are stated in the light most favorable to Plaintiffs.

lawful Court Order for the Plaintiffs' eviction." (Id. ¶ 13).

Plaintiffs' nine-count Complaint alleges that Defendant State Troopers Minnifield and Doe violated the following: (1) Article 1, Section 8 of the Pennsylvania Constitution, which prohibits unreasonable searches and seizures (Count One); (2) the Fourth Amendment's prohibition of unreasonable searches and seizures, actionable here under 42 U.S.C. § 1983 (Count Two); and (3) the Fourteenth Amendment's command that no person be deprived of liberty and property without due process of law, actionable here under 42 U.S.C. § 1983 (Count Three).  Plaintiffs also claim that Minnifield, Doe, and Rogers conspired to deprive Plaintiffs of their rights under the United States Constitution, actionable here under 42 U.S.C. § 1983 and 42 U.S.C. § 1985(3) (Count Four).  Further, Plaintiffs allege that Minnifield, Doe, and Rogers, in violation of state law, engaged in conspiracy (Count Five), wrongfully evicted Plaintiffs (Count Six), and trespassed against Plaintiffs (Count Seven).  Finally, Plaintiffs allege that the Pennsylvania State Police and the Commonwealth of Pennsylvania violated Plaintiffs' rights under the United States Constitution, actionable here under 42 U.S.C. § 1983 (Counts Eight and Nine).[3]

## STANDARD

"To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

---

[3] This action was originally filed in state court on December 23, 2008.  Defendants Commonwealth of Pennsylvania, Pennsylvania State Police, and State Trooper Maurice Minnifield removed this action to federal court on March 16, 2009.  (Doc. No. 1).  As of June 11, 2009, Defendant Inez Rogers had not been served with original process, (Pls.' Br. at 1), and the docket does not reflect service as of the date of this Memorandum Opinion.  Rogers has not responded to Plaintiffs' Complaint.  28 U.S.C. § 1446(a) generally requires that all defendants join in removal.  See Balazik v. County of Dauphin, 44 F.3d 209, 213 (3d Cir. 1995); see also 28 U.S.C. § 1447(c).  One exception to the rule of unanimity is when a non-resident defendant has not been served at the time the removing defendants filed their petition.  Lewis v. Rego Co., 757 F.2d 66, 69 (3d Cir. 1985); accord Balazik, 44 F.3d at 213 n.4.  Clearly, Inez Rogers has not consented to removal.  However, because she is a resident of New Jersey, not Pennsylvania, (see Compl. ¶ 6), and apparently has not been served, the non-service exception to the rule of unanimity applies.

inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949, 1953 (2009) (internal quotations and citations omitted) (holding that the pleading standard articulated in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), applies to "all civil actions" and noting that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice").  In ruling on a motion to dismiss, the court must accept all factual allegations as true and draw all reasonable inferences in the plaintiffs' favor.  Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts, Inc., 140 F.3d 478, 483 (3d Cir. 1998).  A court shall not inquire into "whether the plaintiffs will ultimately prevail, only whether they are entitled to offer evidence to support their claims."  Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996).  Thus, "a complaint will not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  Johnsrud v. Carter, 620 F.2d 29, 33 (3d Cir. 1980).

## ANALYSIS

**I.     Sections 1983 and 1985 Claims Against the Commonwealth of Pennsylvania, the Pennsylvania State Police, and State Troopers in Their Official Capacities (Counts Two, Three, Four, Eight, and Nine)**

Plaintiffs have asserted Section 1983 and Section 1985 claims against the Commonwealth of Pennsylvania, the Pennsylvania State Police, and Defendant State Troopers in their official capacities.  These claims cannot survive.

Section 1983 only imposes liability on "persons," and Section 1985(3) only imposes liability on "two or more persons" who conspire together.  42 U.S.C. §§ 1983, 1985(3).  For the purposes of Section 1983, state agencies and state officers in their official capacities are immune from liability because they are not considered  "persons" within the meaning of the statute.  Will v. Michigan Dept. of State Police, 491 U.S. 58, 70-71 (1989); see also Wagner v. Pa. Capitol Police Dep't, No. 07-1310,

2009 WL 453281, at *5 (M.D. Pa. Feb. 23, 2009) ("Removing the case to federal court does not change the fact that a state cannot be sued under Section 1983 for monetary damages."). Similar immunity from liability exists for actions brought under Section 1985. See Boykin v. Bloomsburg Univ. of Pa., 893 F. Supp. 378, 394 (M.D. Pa. 1995) ("[T]he states' immunity has not been abrogated for actions brought under §§ 1981, 1985, and 1986."), aff'd, 91 F.3d 122 (3d Cir. 1996), cert. denied, 519 U.S. 1078 (1997). State police departments and state troopers are considered state agencies and state officials. See Burnsworth v. PC Lab., No. 05-811, 2008 WL 4372861, at *7 (W.D. Pa. Sept. 19, 2008) ("[The] Pennsylvania State Police is not suable under Section 1983 because it is not a person within the meaning of Section 1983 . . ."). Plaintiffs concede that the U.S. Supreme Court's decision in Will bars all Section 1983 and Section 1985 claims against the Commonwealth, the State Police, and the State Troopers in their official capacities. (Pls.' Br. at 4; Pls.' Resp. ¶ 1). Accordingly, Plaintiffs' Section 1983 claims against the Pennsylvania State Police and the Commonwealth of Pennsylvania in Counts Eight and Nine respectively will be dismissed. See Setser v. Pennsylvania, No. 07-0398, 2007 WL 1412248, at *1 (M.D. Pa. May 10, 2007) (dismissing Section 1983 claims against the Commonwealth of Pennsylvania "as legally frivolous").[4] Further, Counts Two, Three, and Four will be dismissed only to the extent that these counts assert Section 1983 and Section 1985 claims against Defendants Minnifield and Doe in their official capacities.

II. **Qualified Immunity: Fourth Amendment and Fourteenth Amendment Claims Against State Troopers in Their Individual Capacities, Actionable Here Under Section 1983 (Counts Two and Three)**

Defendants contend that Plaintiffs have not sufficiently pled causes of action against the State Troopers in their individual capacities for violations of Plaintiffs' constitutional rights under the Fourth

---

[4] A municipal body or other local government unit, not part of a state for Eleventh Amendment purposes, is a "person" subject to suit under Section 1983. See Monell v. Dep't of Soc. Servs. of City of N.Y., 436 U.S. 658, 690-91 (1979).

and Fourteenth Amendments, actionable here under 42 U.S.C. § 1983, because the doctrine of qualified immunity bars such claims. (Defs.' Br. at 12-14). The Court disagrees.[5]

Government officials are immune from suit in their individual capacities unless, taken in the light most favorable to the party asserting the injury, (1) the facts alleged show the officer's conduct violated a constitutional right and (2) the right was clearly established at the time of the objectionable conduct. Giles v. Kearney, 571 F.3d 318, 325 (3d Cir. 2009) (quoting Saucier v. Katz, 533 U.S. 194, 201 (2001)). Put another way, an officer performing his discretionary functions is "shielded from liability for civil damages insofar as [his] conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Curley v. Klem, 298 F.3d 271, 277 (3d Cir. 2002) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).[6] This doctrine provides not only a defense to liability, but immunity from suit. See Hunter v. Bryant, 502 U.S. 224, 227 (1991). The court may use its discretion to determine "which of the two prongs of the qualified immunity analysis should be addressed first." Pearson v. Callahan, 129 S. Ct. 808, 818 (2009). The Court will initially address the first prong of Saucier—namely, whether the facts alleged show that Defendant State Troopers violated Plaintiffs' constitutional rights.

   A.   **Fourth Amendment (Count Two)**

Plaintiffs have alleged sufficient facts to state a claim that Defendant State Troopers violated Plaintiffs' Fourth Amendment rights. The Fourth Amendment protects a person's right "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . ." Brown v.

---

[5] "[T]o establish *personal* liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right." Kentucky v. Graham, 473 U.S. 159, 166 (1985). Plaintiffs allege that Defendant State Troopers were acting under color of state law when they evicted Plaintiffs while "in full uniform and operating a marked Pennsylvania State Police vehicle." (Compl. ¶¶ 8, 21, 25, 29).

[6] An officer's subjective belief about the constitutionality of his conduct is irrelevant to the question of whether qualified immunity applies. See Crawford-El v. Britton, 523 U.S. 574, 588 (1998).

Muhlenberg Twp., 269 F.3d 205, 209 (3d Cir. 2001) (quoting U.S. Const. amend. IV), rehearing en banc denied, 273 F.3d 390 (3d Cir. 2001).  To establish a violation of the Fourth Amendment, Plaintiff must show that the "defendant's actions (1) constituted a search or seizure within the meaning of the Fourth Amendment, and (2) were unreasonable in light of the surrounding circumstances."  Open Inns, Ltd. v. Chester County Sheriff's Dep't, 24 F. Supp. 2d 410, 424 (E.D. Pa. 1998) (citing Brower v. County of Inyo, 489 U.S. 593, 595-600 (1989)).  A seizure occurs when there is a meaningful interference with a person's possessory interest in his property.  Soldal v. Cook County, Ill., 506 U.S. 56, 61 (1992).  The acts of police officers in assisting an illegal eviction without an order, a writ, a warrant, or any other statutory authority can constitute an unreasonable seizure in violation of the Fourth Amendment.  See Open Inns, 24 F. Supp. 2d at 424.

   Here, Plaintiffs allege that Defendant State Troopers evicted Plaintiffs from their mobile home and padlocked their door to prevent reentry without an order or legal authority.  (Compl. ¶ 8).  It is clear that such conduct, if true, plausibly amounts to an interference with Plaintiffs' possessory interests.  Plaintiffs also allege that the State Troopers lacked a court order and knowingly had no legal authority to evict Plaintiffs.  (Id. ¶¶ 11-12).  Such behavior states a claim for an unreasonable seizure in violation of the Fourth Amendment.  See Open Inns, 24 F. Supp. 2d at 424 (holding that police officers who actively assist a private party to evict a tenant "without an order, a writ, a warrant, or any statutory authority [engage in] precisely the type of unreasonable behavior that the Fourth Amendment forbids"); accord Soldal, 506 U.S. at 68 (holding that the towing of a trailer was a seizure "subject to Fourth Amendment scrutiny even though no search within the meaning of the Amendment [took] place"); Gale v. Storti, 608 F. Supp. 2d 629, 633-34 (E.D. Pa. 2009).[7]

---

[7] While the Fourth Amendment does not protect possessory interests in all types of property, it explicitly protects the possessory interest in a house or mobile home.  See Soldal, 506 U.S. at 63 n.7.

### B.     Fourteenth Amendment (Count Three)

Plaintiffs have also sufficiently alleged that Defendant State Troopers violated Plaintiffs' Fourteenth Amendment rights.[8] "The fourteenth amendment prohibits state deprivations of life, liberty, or property without due process of law." Robb v. City of Phila., 733 F.2d 286, 292 (3d Cir. 1984); accord U.S. Const. amend. XIV, § 1.  It is "well established that possessory interests in property invoke procedural due process protections." Abbott v. Latshaw, 164 F.3d 141, 146 (3d Cir. 1998), cert. denied, 527 U.S. 1035 (1999).  "At the core of procedural due process jurisprudence is the right to advance notice of significant deprivations of liberty or property and to a meaningful opportunity to be heard." Id.  To state a procedural due process claim, a plaintiff "must establish that the officers were acting as state actors when they deprived him of a property interest to which he had a legitimate claim of entitlement without the process he deserved." Id.  Here, as Plaintiffs allege that they were given no notice or opportunity to be heard prior to the State Troopers evicting them from their home, (see Compl. ¶¶ 11-12), there is no question that Plaintiffs have sufficiently stated a claim that state actors deprived them of their property without due process of law.  See Gale, 608 F. Supp. 2d at 634 (holding that plaintiff stated a legally sufficient Fourteenth Amendment claim where defendant police officers helped a landlord evict the plaintiff without giving notice and without allowing the plaintiff to remove his personal possessions).

### C.     Clearly Established Rights (Counts Two, Three, and Four)

The Court will now turn its attention to the second prong of Saucier—namely, whether the allegedly violated constitutional rights were "clearly established" in Counts Two, Three, and Four.  See

---

[8] Plaintiffs also allege in Counts Three and Four respectively that their Fifth Amendment rights were violated by the conduct of Defendant State Troopers and that there was a conspiracy between Defendant State Troopers and Rogers to violate Plaintiffs' Fifth Amendment rights.  The Fifth Amendment applies in suits against the federal government, while the Fourteenth Amendment applies in suits against state governments.  See Rutherford v. United States, 702 F.2d 580, 583 n.4 (5th Cir. 1983).  As Defendant State Troopers are state actors, not agents of the federal government, these claims brought under the Fifth Amendment will be dismissed.

Saucier, 533 U.S. at 201; accord Mitchell v. Forsyth, 472 U.S. 511, 524 (1985). The Court must first decide if a "clearly established" right was violated. Gale, 608 F. Supp. 2d at 634. If so, the Court will then examine whether the State Troopers, as alleged, acted reasonably in depriving Plaintiffs of this clearly established right. Id. Defendant State Troopers argue that their actions alleged in Plaintiffs' Complaint were reasonable, and therefore they cannot be held liable. (Defs.' Br. at 13).

For a right to be clearly established, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. Giles, 571 F.3d at 325 (quoting Saucier, 533 U.S. at 202); accord Santiago v. Fields, No. 05-4884, 2009 WL 693642, at *8-9 (E.D. Pa. Mar. 12, 2009). "Clearly established" means "some but not precise factual correspondence between relevant precedents and the conduct at issue," although "officials need not predict the future course of constitutional law." McLaughlin v. Watson, 271 F.3d 566, 571 (3d Cir. 2001) (internal quotations omitted) (quoting Ryan v. Burlington County, 860 F.2d 1199, 1208-09 (3d Cir. 1988)), cert. denied, 535 U.S. 989 (2002). To be clearly established there is no need that "the very action in question [has] previously been held unlawful." Safford Unified Sch. Dist. No. 1 v. Redding, 129 S. Ct. 2633, 2642 (2009) (quoting Wilson v. Layne, 526 U.S. 603, 615 (1999)). The "salient question" is whether the law at the time of the incident gives the defendant "fair warning" that his conduct was unconstitutional. Hope v. Pelzer, 536 U.S. 730, 739-40 (2002). After viewing the case *sub judice* at this preliminary stage of litigation, Counts Two, Three, and Four of Plaintiffs' Complaint sufficiently allege the violation of clearly established rights under the Fourth and Fourteenth Amendments. As one district court has held, "[t]he Fourth Amendment protection against unreasonable searches and seizures and the Fourteenth Amendment right to due process are clearly established laws." Gale, 608 F. Supp. 2d at 634. The Third Circuit has similarly held that "it is not for law enforcement officers to decide

who is entitled to possession of property." See Abbott, 164 F.3d at 149.  Rather, "it is the domain of the courts."  Id.

Further, the question of whether Defendant State Troopers acted reasonably is a fact-intensive inquiry.  While qualified immunity is generally a question of law that should be resolved at the earliest possible stages of litigation, see Giles, 571 F.3d at 325-26, "a decision on qualified immunity will be premature when there are unresolved disputes of historical fact relevant to the immunity analysis."  Curley, 298 F.3d at 278.  The primary step in assessing the constitutionality of an officer's actions "is to determine the relevant facts."  See Giles, 571 F.3d at 326.

This case is similar to Gale v. Storti, 608 F. Supp. 2d 629 (E.D. Pa. 2009), where various defendants moved for dismissal of the plaintiffs' constitutional claims arising out an allegedly unlawful eviction.  The district court noted that the relevant qualified immunity inquiry is "whether or not the officers made a reasonable mistake as to what the law requires," and concluded that "[a]nswering this depends on a factual inquiry, particularly, exactly what documents were provided to the officers prior to going to the premises and what the contents of these documents were."  See Gale, 608 F. Supp. 2d at 634.  As in Gale, there are simply too few settled facts in this case to definitively determine at this point whether the alleged constitutional violations by Defendant State Troopers were reasonable, thereby rendering the Troopers immune from liability under the doctrine of qualified immunity.  There is a question as to whether Defendant State Troopers evicted Plaintiffs without legal authority and whether the State Troopers made a reasonable mistake as to what the law requires.  These questions depend on a factual inquiry that has not yet been conducted.  See id.; see also Open Inns, 24 F. Supp. 2d at 420 (noting on summary judgment that qualified immunity was inappropriate where the defendant officers, in repossessing the plaintiffs' property, "went far beyond the ministerial act of serving process or doing their common law duty of keeping the peace").  Because the Court finds it

necessary for these claims to proceed to discovery, Plaintiffs' Section 1983 claims cannot be dismissed on the ground of qualified immunity. Simply stated, at this preliminary stage, the Court finds that Plaintiffs have stated a claim that Defendant State Troopers unreasonably violated clearly established laws.[9]

### III. Conspiracy to Deprive Plaintiffs of Their Constitutional Rights (Count Four)

#### A. Section 1983

Defendant State Troopers also argue that Plaintiffs fail to state a claim for conspiracy under Section 1983. (Defs.' Br. at 10-12). The Court disagrees.[10]

To state a conspiracy claim under Section 1983, a plaintiff must allege (1) the existence of a conspiracy involving state action; and (2) a deprivation of civil rights in furtherance of the conspiracy by a party to the conspiracy. Marchese v. Umstead, 110 F. Supp. 2d 361, 371 (E.D. Pa. 2000). A plaintiff must allege that there was an agreement, understanding, or "meeting of the minds" to violate the plaintiff's rights. Startzell v. City of Phila., 533 F.3d 183, 205 (3d Cir. 2008) (quoting Adickes v. S.H. Kress & Co., 398 U.S. 144, 158 (1970)). "A plaintiff must make 'specific factual allegations of combination, agreement, or understanding among all or between any of the defendants to plot, plan, or conspire to carry out the alleged chain of events.'" Marchese, 110 F. Supp. 2d at 371 (quoting Panayotides v. Rabenold, 35 F. Supp. 2d 411, 419 (E.D. Pa. 1999)). "Only allegations of conspiracy

---

[9] Defendants also argue that "[i]f the sole reasonable inferences that can be drawn from the complaint are insufficient to dismiss all the federal claims for damages, the Court should order [plaintiffs] to provide a more definitive statement regarding what information plaintiffs claim was provided to the troopers." (Defs.' Br. at 14). The Court declines Defendants' invitation, as Plaintiffs specifically allege that the eviction was completed "without any lawful Court Order or other proper authority." (Compl. ¶ 11). This allegation must be deemed true at this stage.

[10] Count Four alleges that Defendant State Troopers Minnifield and Doe, along with Rogers, acted under color of state law and "conspired to subject the Plaintiffs to the deprivation" of their Fourth and Fourteenth Amendment rights. (Compl. ¶ 29). Thus, according to Plaintiffs, Minnifield, Doe, and Rogers are liable under Section 1983. (Id.). It appears that Rogers is a private individual. "A private actor who conspires with a state actor to deprive another of his rights may be found to have acted under color of state law." Constitutional Defense Fund v. Humphrey, No. 92-396, 1992 WL 164734, at *4 (E.D. Pa. July 2, 1992) (citing Dennis v. Sparks, 449 U.S. 24 (1980) and Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970)).

which are particularized, such as those addressing the period of the conspiracy, the object of the conspiracy, and certain other actions of the alleged conspirators taken to achieve that purpose will be deemed sufficient." Id. (quoting Outterbridge v. Pa. Dep't of Corr., No. 00-1541, 2000 WL 795874, at *3 (E.D. Pa. June 7, 2000)).

Here, Plaintiffs allege that, sometime shortly before Plaintiffs were evicted from their home on December 30, 2006, Rogers and Defendant State Troopers agreed to unlawfully evict Plaintiffs for the purpose of "avoid[ing] the necessity of securing a lawful Court Order for the Plaintiffs' eviction." (Compl. ¶ 13). Plaintiffs also allege that Defendant State Troopers committed unconstitutional actions in furtherance of the conspiracy when they—while uniformed and knowing that they lacked proper authority—drove in a police vehicle to Plaintiffs' home and "demanded that the Plaintiffs immediately and permanently vacate their home." (Id. ¶ 8). These facts sufficiently allege both a conspiratorial agreement involving state actors and an act in furtherance of the conspiracy designed to deprive Plaintiffs of their constitutional rights. While the "mere incantation of the words 'conspiracy' or 'acted in concert' does not talismanically satisfy" the pleadings requirements of a conspiracy claim, see Loftus v. Se. Pa. Transp. Auth., 843 F. Supp. 981, 987 (E.D. Pa. 1994), Plaintiffs have sketched out the persons responsible—along with the conduct, approximate timing, and motive of the conspiracy—sufficient for the Court to reasonably infer the existence of a conspiratorial agreement. Consequently, these allegations sufficiently plead a Section 1983 conspiracy claim. See Gale, 608 F. Supp. 2d at 634-35 (holding that plaintiff sufficiently stated a conspiracy claim by alleging that police officers violated his Fourth and Fourteenth amendment rights when, after the plaintiff's landlord requested the officer's assistance, the officers assisted the landlord in evicting plaintiff without giving him time to collect his personal belongings); Piskanin v. Hammer, No. 04-1321, 2005 WL 3071760, at *5 (E.D. Pa. Nov. 14, 2005) (holding that plaintiff sufficiently alleged a Section 1983 claim where he

claimed that, at some point in the two weeks preceding plaintiff's arrest, (a) a private party and a police officer agreed to falsely accuse the plaintiff of a crime, and (b) the police officer, in furtherance of the conspiracy, knowingly submitted a false criminal complaint against plaintiff and arrested him in violation of his Fourth Amendment rights), appeal dismissed, 269 F. App'x 159 (3d Cir. 2008).

### B.  Section 1985

While Plaintiffs have sufficiently pled a Section 1983 conspiracy claim, they have not stated a claim for conspiracy pursuant to Section 1985. To state a conspiracy claim under Section 1985(3), a plaintiff must allege (1) a conspiracy; (2) motivated by a racial or class based discriminatory animus designed to deprive, directly or indirectly, any person or class of persons of the equal protection of the laws; (3) an act in furtherance of the conspiracy; and (4) an injury to person or property or the deprivation of any right or privilege of a citizen of the United States. Ridgewood Bd. of Educ. v. N.E. ex rel. M.E., 172 F.3d 238, 253-54 (3d Cir. 1999) (quoting Lake v. Arnold, 112 F.3d 682, 685 (3d Cir. 1997)). "[T]he allegation of a 'class-based animus' naturally presumes that there is a specific, identifiable class against whom the defendants can have discriminated." Farber v. City of Paterson, 440 F.3d 131, 135 (3d Cir. 2006) (quoting Aulson v. Blanchard, 83 F.3d 1, 5 (1st Cir. 1996)).

As noted above, Plaintiffs have sufficiently alleged a conspiracy—the existence of an agreement and an act in furtherance of the conspiracy depriving Plaintiffs of their constitutional rights. However, Plaintiffs have made no allegation—and it is not reasonable to infer from the alleged facts—that the conspiracy was motivated by racial or class based discriminatory animus. To the extent commercial or economic animus is alleged, this is insufficient to form the basis of a Section 1985 claim. See United Bhd. of Carpenters and Joiners of Am., Local 610, AFL-CIO, 463 U.S. 825, 837 (1983) ("[W]e find no convincing support in the legislative history for the proposition that [Section

1985] was intended to reach conspiracies motivated by bias towards others on account of their *economic* views, status, or activities."). Indeed, Plaintiffs admit that "it is not readily apparent that any conspiracy here was motivated by racial bias or other class based discrimination." (Pls.' Br. at 8). Plaintiffs' argument that, despite their inability to claim discriminatory animus, they should be permitted discovery on their Section 1985 claim is to no avail, as an abstract conceivable claim does not provide a basis for discovery. See Palmieri v. Lynch, 392 F.3d 73, 86-87 (2d Cir. 2004) (rejecting plaintiff's argument that, because he was not afforded discovery, dismissal of his Section 1985 claim was premature; noting that because plaintiff "never contended that a class-based animus existed . . . there was simply no basis for discovery"), cert. denied, 546 U.S. 937 (2005); see also Twombly, 550 U.S. at 570 (holding that a plaintiff must nudge his claim "across the line from conceivable to plausible" to survive a motion to dismiss). Accordingly, Plaintiffs' Section 1985 conspiracy claim in Count Four will be dismissed.

## IV. Plaintiffs' Claim Under the Pennsylvania Constitution (Count One)

Count One of Plaintiffs' Complaint, which seeks monetary damages arising out of Defendant State Troopers' alleged violations of Article 1, Section 8 of the Pennsylvania Constitution, also fails to state a claim.[11] In Jones v. City of Phila., 890 A.2d 1188, 1216 (Pa. Commw. Ct. 2006), appeal denied, 909 A.2d 1291 (Pa. 2006), the Pennsylvania Commonwealth Court held that Article 1, Section 8 of the Pennsylvania Constitution does not embody a private cause of action for monetary damages. Indeed, "[t]o date, neither Pennsylvania statutory authority nor appellate case law has authorized the award of monetary damages for a violation of the Pennsylvania Constitution." Id. at 1208. "Pennsylvania has

---

[11] Though Defendants did not specifically address whether Count One should be dismissed on the ground that it improperly asserts a private cause of action for monetary damages under the Pennsylvania Constitution, "district courts may dismiss claims that do not state causes of action sua sponte." Kuhns v. City of Allentown, — F. Supp. 2d —, 2009 WL 2185166, at *14 n.60 (E.D. Pa. 2009); accord Bryson v. Brand Insulations, Inc., 621 F.2d 556, 559 (3d Cir. 1980); Bintliff-Ritchie v. Am. Reinsurance Co., 285 F. App'x 940, 943 (3d Cir. 2008).

no statute akin to 42 U.S.C. § 1983 that authorizes lawsuits based on violations of the Pennsylvania Constitution...." Dooley v. City of Phila., 153 F. Supp. 2d 628, 663 (E.D. Pa. 2001).  Since Jones, "federal courts addressing this issue with respect to § 8 have . . . held that no private cause of action exists."  Hall v. Raech, 08-5020, 2009 WL 811503, at *6 (E.D. Pa. Mar. 25, 2009); see, e.g., Stockham Interests, LLC v. Borough of Morrisville, No. 08-3431, 2008 WL 4889023, at *10 (E.D. Pa. Nov. 12, 2008) (holding, at Rule 12(b)(6) stage, that "[t]here is no private cause of action for damages arising from violations of the Pennsylvania Constitution," and granting defendants' request "to deny any monetary relief arising out of violations of the Pennsylvania Constitution"); Huberty v. U.S. Ambassador to Costa Rica, No. 07-1420, 2007 WL 3119284, at *5 (M.D. Pa. Oct. 22, 2007) (holding that, "[a]s Plaintiff seeks only a monetary remedy in the form of compensatory and punitive damages, the cause of action alleged pursuant to the Pennsylvania Constitution will be dismissed"), aff'd, 316 F. App'x 120 (3d Cir. 2008).  Accordingly, Count One will be dismissed.

**V.      Sovereign Immunity and Plaintiffs' State Law Claims (Counts Five, Six, and Seven)**

Defendant State Troopers contend that they are immune from Plaintiffs' remaining state law claims (Counts Five, Six, and Seven) based on the doctrine of sovereign immunity.  (Defs.' Br. at 6-9).  At this early stage, the Court disagrees.

Section 2310 of Pennsylvania's sovereign immunity statute states as follows: "[T]he Commonwealth, and its officials and employees *acting within the scope of their duties*, shall continue to enjoy sovereign immunity and official immunity and remain immune from suit except as the General Assembly shall specifically waive the immunity."  1 Pa. Cons. Stat. Ann. § 2310 (emphasis added); see also Bowers v. Nat'l Collegiate Athletic Ass'n, 475 F.3d 524, 546 n.25 (3d Cir. 2007) ("The party

asserting that it is entitled to sovereign immunity has the burden of production and persuasion.").[12] This statute makes clear that employees of the Commonwealth of Pennsylvania are entitled to sovereign immunity—with certain exceptions articulated by statute—when they are "acting within the scope of their duties."  See Story v. Mechling, 412 F. Supp. 2d 509, 518-19 (W.D. Pa. 2006), aff'd, 214 F. App'x 161 (3d Cir. 2007); Strothers v. Nassan, No. 08-1624, 2009 WL 976604, at *7 (W.D. Pa. Apr. 9, 2009).  Plaintiffs argue that their state law claims against Defendant State Troopers individually are not barred by sovereign immunity because the State Troopers, as alleged, were not "*acting within the scope of their duties*" when they evicted Plaintiffs.  (Pls.' Br. at 5).[13]  As a result, the central question here in determining whether sovereign immunity applies is whether Plaintiffs' Complaint

---

[12] Defendants removed this action to federal court.  (Doc. No. 1).  "[W]hile a removing State invokes federal jurisdiction and waives its [Eleventh Amendment] immunity from suit in a federal forum, such waiver does not prevent the State from asserting state sovereign immunity as provided for by its own law as a defense in federal court."  Lombardo v. Pa. Dept. of Public Welfare, 540 F.3d 190, 200 n.8 (3d Cir. 2008).

[13] Plaintiffs are contending that, for the purposes of their Section 1983 claims, Defendant State Troopers were acting under color of state law during the eviction, but, for the purposes of their state law claims, the State Troopers were not acting within the scope of their duties.  These two propositions are not necessarily inconsistent.  One district court within this Circuit recently explained this distinction in the context of qualified immunity:

> Individual Defendants argue that public employees acting under the color of state law must be acting within the scope of their official authority.  Unfortunately, this argument confuses the relevant issues.  It is true that the traditional definition of "acting under color of state law" requires an official exercising power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law."  West v. Atkins, 487 U.S. 42, 49 (1988).  However, the ultimate question in determining if a public employee is acting under the color of state law is whether that official's action are fairly attributable to the state.  Rendell-Baker v. Kohn, 457 U.S. 830, 838 (1982) (quoting Lugar v. Edmondson Oil Co., 457 U.S. 922, 933 (1982)).  This is a separate inquiry from whether the actions of an official are within the scope of that official's authority although the two may intersect at times.  The Supreme Court has noted the distinction between the two holding that personal liability under § 1983 for acts taken under color of state law may be imposed on acts both within as well as outside an official's authority.  Hafer v. Melo, 502 U.S. 21, 29 (1991).  Furthermore, the Court of Appeals has held that even "one who is without actual authority, but who purports to act according to official power, may also act under color of state law."  Barna v. City of Perth Amboy, 42 F.3d 809, 816 (3d Cir. 1994).

Neuberger v. Gordon, 567 F. Supp. 2d 622, 638 (D. Del. 2008); see also Kedra v. City of Phila., 454 F. Supp. 652, 664-65 (E.D. Pa. 1978) ("This source of authority question [in determining whether a state employee acted under color of state law] is much broader than whether a state employee has acted within the scope of his official authority.").  Moreover, the standard "under color of state law" is an inquiry of federal civil rights law, while the issue of scope of one's duties is evaluated under Pennsylvania law.  See Crawford v. Pennsylvania, No. 03-693, 2005 WL 2465863, at *13 (E.D. Pa. Oct. 6, 2005), vacated in part on other grounds, 2006 WL 148881 (M.D. Pa. Jan. 19, 2006).

pleads sufficient factual content that would allow the Court to draw the reasonable inference that, as a matter of Pennsylvania law, Defendant State Troopers acted outside the scope of their duties when they evicted Plaintiffs.  See Brumfield v. Sanders, 232 F.3d 376, 380 (3d Cir. 2000) (applying Pennsylvania agency law), cert. denied, 532 U.S. 958 (2001).[14]  The Court concludes that such an inference can be made.

Under Pennsylvania Law, an employee acts within the scope of his duties if his "conduct (a) is the kind or type of work the defendant is employed to perform; (b) it occurs substantially within the authorized time and space limits; and (c) it is actuated, at least in part, by a purpose to serve the master."  Id.; accord Costa v. Roxborough Mem'l Hosp., 708 A.2d 490, 493 (Pa. Super. Ct. 1998); Restatement (Second) of Agency § 228 (1958).  Central to the analysis in this case is the third prong—namely, whether the Court can conclude definitively that, as alleged, the State Troopers' actions in evicting Plaintiffs were actuated, at least in part, by a purpose to serve their employer's interests.  Even unauthorized acts committed by an employee are within the scope of employment so long as "they are clearly incidental to the master's business."  Brumfield, 232 F.3d at 380-81 (holding that the existence of personal motive is insufficient to remove the conduct from the scope of employment so long as the employer also benefits).

For example, in Strothers, the district court held that the plaintiff's allegation that the defendant Pennsylvania state police trooper seized him "without reason" and under circumstances not calculated to serve the interests of the police was sufficient to overcome the defendant's sovereign immunity defense at the pleading stage.  See Strothers, 2009 WL 976604, at *10.  There, the plaintiff alleged that

---

[14] Plaintiffs do not appear to contend that Pennsylvania waived its immunity from the state law conspiracy, wrongful eviction, and trespass claims asserted in Plaintiffs' Complaint.  Pennsylvania law is clear that no statutory provision shall constitute a waiver of sovereign immunity except as specifically provided by statute.  See 42 Pa. Cons. Stat. Ann. § 8521(a).  Further, Plaintiffs do not appear to contend that any of the nine statutory exceptions to sovereign immunity apply.  See 42 Pa. Cons. Stat. Ann. § 8522(b).

the defendant state trooper, after a verbal altercation with other individuals, seized the plaintiff and threw him to the ground.  After threatening the plaintiff, the defendant state trooper then threw the plaintiff against a car, handcuffed him, and placed him in the back of a police car.  The defendant state trooper then drove off and, shortly thereafter, released the plaintiff after citing him for disorderly conduct.  Id. at *2.  The Strothers Court explained that "an assault committed by an employee upon another for personal reasons or in an outrageous manner is not actuated by an intent to perform the business of the employer and, as such, is not within the scope of employment."  Id. at *10 (quoting R.A. v. First Church of Christ, 748 A.2d 692, 700 (Pa. Super. Ct. 2000)).  Accordingly, the Court concluded that this question should proceed to discovery.  Id. at *8, 10.

As in Strothers, it is plausible that Defendant State Troopers' alleged conduct neither benefited their employer nor was incidental to their employer's business of upholding the law.  Plaintiffs allege that the uniformed State Troopers were not acting within the scope of employment when they—while fully aware that the eviction was not authorized by the courts or the police department—conspired with a private citizen to evict Plaintiffs "for the very purpose of avoiding the necessity of securing a lawful court order."  (Pls.' Br. at 7; see also Compl. ¶ 13).  Thus, Plaintiffs allege that the purpose of Defendant State Troopers' eviction was to *circumvent, not uphold, the law*.  If these allegations are true, it is reasonable to infer that Defendant State Troopers were not motivated, even in part, by a desire to serve their employer and thus were not acting within the scope of their employment.  But cf. Centagon, Inc. v. Sheahan, 142 F. Supp. 2d 1077, 1082 (N.D. Ill. 2001) (holding that the sheriff's deputies acted within the scope of their employment where it was not disputed that the execution of eviction order was valid and that the plaintiffs had notice of that order).

Defendant State Troopers argue that their alleged conduct was, at least in part, motivated by a purpose to serve their employer because, when the State Troopers evicted Plaintiffs, "they were doing

their duties" and their alleged conduct could not have been performed "unless they were working as troopers." (Defs.' Br. at 7). However, that the State Troopers were "doing their duties" only indicates that they were performing "the kind or type of work the defendant is employed to perform"; this says little, if anything, about whether the State Troopers were motivated, even in part, to serve their employer's interests. The motivation of Defendant State Troopers and whether they had proper court authority to evict Plaintiffs are all factual questions that cannot be (and have not been) answered at this preliminary stage of litigation. Indeed, "[t]he question of whether an individual has acted within the scope of his or her employment is ordinarily a question of fact for the jury to decide." Strothers, 2009 WL 976604, at *8 (quoting Orr v. William J. Burns Int'l Detective Agency, 12 A.2d 25, 27 (Pa. 1940)). While it is true that such questions can be decided by a court as a matter of law "where the facts and the inferences to be drawn from them are not in dispute," this is not the case here. See id. at *8, 10. Accordingly, Plaintiffs' state law claims in Counts Five, Six, and Seven will not be dismissed.[15]

An appropriate Order will be docketed.

---

[15] Defendant State Troopers remain free to move for summary judgment with respect to this issue if discovery reveals that the State Troopers acted pursuant to their employment responsibilities rather than pursuant to personal motives unrelated to law enforcement.